OPINION OF THE COURT
Stanley L. Sklar, J.
The issue presented on this motion is whether to recognize a new cause of action for the breach of the right to dignity of a terminal cancer patient. Defendant Memorial Hospital for Cancer and Allied Diseases (Memorial), claiming that the proposed cause of action should not be recognized, has moved pursuant to CPLR 3211 (a) (7) and 3212 for an order dismissing that cause of action asserted by plaintiff, Sophia Afentakis, against those responsible for the medical treatment of her husband, decedent Panos Afentakis (Afentakis), in the months and weeks before his death in 1991 from untreatable brain cancer.
According to her attorneys, plaintiff’s purpose in presenting a claim for "breach of dignity” is to "seek judicial acknowledgment that cancer patients are entitled to some minimal amount of care, attention and dignity, notwithstanding that they have a terminal prognosis.” In her complaint, plaintiff proposes that Afentakis was possessed of a "fundamental right to be treated with dignity” which was breached repeatedly by Memorial in its day-to-day treatment of Afentakis. Both in the complaint and in opposition to this motion, plaintiff cites examples of Memorial’s alleged breach of Afentakis’ right to be treated with dignity. Examples range from "inattentive care” (such as Memorial’s delay in treating a bruised arm caused by "possibly sloppy IV infiltrated work,” until plaintiff complained), to a doctor’s thoughtless cruelty in allegedly expressing, in front of Afentakis, the doctor’s belief that there was no longer any point in keeping Afentakis alive.[1]
The plaintiff, through her attorneys, has made it clear that her breach of dignity claim is not intended to be a medical malpractice claim arising out of departures from standards of good and accepted medical practice,[2] but a new tort which, admittedly, has not been recognized by any court. Nevertheless, plaintiff’s attorneys also propose that plaintiff’s claim "is *964 quite similar to or may be just another way of articulating a claim for negligent infliction of emotional distress,” apparently, in recognition of the weakness inherent in plaintiffs pleadings.
Neither plaintiffs allegations nor her proof suffice to sustain a traditional cause of action for negligent infliction of emotional harm. Although the parameters of this tort have been broadened in recent years, so to relax the rule that psychic injuries will only be compensable in the presence of physical injury (see, Lancellotti v Howard, 155 AD2d 588), a claim based on the negligent infliction of emotional distress "must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiffs physical safety or caused the plaintiff [to] fear for his or her own physical safety”. (Supra, at 590; see also, Glendora v Gallicano, 206 AD2d 456 [absent accompanying physical injury, a claim for negligent infliction of emotional harm must be premised on conduct which "unreasonably endangers” the plaintiffs physical safety].)
Plaintiff has made no effort to substantiate with admissible evidence that Afentakis suffered physical injuries during his hospitalization which can be attributed to departures from standard good and accepted medical practice, and which are distinguishable from the ordinary discomfiture which often attend a hospital stay. Plaintiffs descriptions of Afentakis’ physical injuries, and her conclusion that these injuries were attributable to the hospital’s negligent lack of proper concern for its patient’s well-being are based only on her own speculation, and hearsay evidence concerning what others allegedly told her about Afentakis’ condition. More to the point, however, is plaintiffs failure to allege with respect to this cause of action, or offer proof of any emotional injury Afentakis actually sustained, beyond speculation as to what he must have been feeling or thinking, and the evidence of her own understandable distress as she watched her husband’s decline. As a result, plaintiff has failed to allege or offer proof of any emotional injury commensurate with the type of injuries necessary to support a claim for negligent infliction of emotional distress.
Despite references to bruises and emotional distress, the actual injury which Afentakis is alleged to have endured as a result of the hospital’s alleged breach of duty with respect to this cause of action, and the injury for which plaintiff desires to be compensated, is nothing more nor less than the loss of *965 Afentakis’ dignity. Dignity is (as Memorial argues) an elusive concept, susceptible of many definitions; but which can, in the present context, most likely be equated to such notions as a sense of worth and respect.[3] Thus, it appears that plaintiff is attempting to create a cause of action which would ensure terminal hospital patients the right to retain their sense of self-worth and self-respect, despite their illnesses, in the modern hospital setting, the breach of which would be compensable in a court of law.
No thinking person could argue with the plaintiff’s claim that "all patients, even if they are involved in clinical research or are terminally ill have the right to be treated with dignity and caring.” Unfortunately, ordinary human experience teaches that a certain unavoidable loss of dignity attends most illnesses, terminal and otherwise, both in and out of the hospital setting. An unsuitable expansion of liability would certainly result should courts attempt to distinguish between the ordinary assaults upon a patient’s dignity which stem from the loss of power and control which is all too often the corollary to illness, and the loss of autonomy produced by even a short hospitalization, from those occasioned by the failure of a hospital and its staff to maintain a certain level of caring, respect and consideration for the feelings of its charges. It would be unsuitable for courts to attempt to dictate a standard of care relating to such an abstraction as the precise quantum of respect and consideration which should be accorded hospital patients by hospitals and their staffs, or to arbitrate the complex emotional response a patient’s terminal illness is likely to invoke in their caretakers.[4] Consequently, this court declines to recognize plaintiff’s claim for breach of a right to dignity. As the plaintiff’s allegations and proof fail to substantiate a claim presently cognizable in a court of law, this cause of action must be dismissed.
[Portions of opinion omitted for purposes of publication.]

. It should be noted in regard to this distressing incident that the plaintiff only testified that she "thinks” this is what the doctor told her husband in ICU.

. It is noteworthy in this regard that the plaintiff has made no attempt in her papers to amend the complaint to assert a traditional malpractice *964 cause of action, which application would in any event have to be supported by an expert’s affirmation not here provided.

. See, Webster’s New Twentieth Century Dictionary 510 (2d ed 1979).

. The complex relationship which often develops between a physician and a terminally ill patient, and the effect of the patient’s illness on both parties, has been insightfully, and compassionately explored by an increasing number of health care providers including surgeon Sherwin B. Nuland, in his book How We Die (Vintage Books 1995).